### Stalla v. Ohio Bell Tel. Co.
*[Cite as 2 AOA 361]*

*Case No. 56512*
*Cuyahoga County, (8th)*
*Decided March 15, 1990*

*R.C. 1343.03*
*R.C. 4123.74*
*App.R. 3*
*Civ. R. 49(B)*

*Joel Levin William, S. Jacobson Nurenberg, Plevin, Heller & McCarthy Co., L.P.A. Seventh Floor, Engineers Building, 1365 Ontario Street, Cleveland, Ohio 44114, For Plaintiff-Appellee.*

*Edward L. Bettendorf, 45 Erieview Plaza, Suite No. 1400, Cleveland, Ohio 44114, For Defendant-Appellant.*

*Howard J.C. Nicols, Michael D. Weikle, Squire, Sanders & Dempsey, 1800 Huntington Building, Cleveland, Ohio 44115, For Third party Defendant.*

PARRINO, J.

This appeal arises from a jury's award of damages to line mechanic Donald Stalla for injuries which occurred when he fell from a utility pole jointly owned by defendant Ohio Bell Telephone Co. ("O.B.T.") and his employer the Cleveland Electric Illuminating Co. ("C.E.I."). In a timely appeal O.B.T. challenges both the grant of summary judgment in favor of third-party defendant C.E.I. and the jury verdict for Stalla raising four assignments of error.[1] O.B.T. maintains (1) that the adjudication of its claims against C.E.I. by summary judgment was error; (2) that jury's answers to the special interrogatories were inconsistent; (3) that the court's written reply to a jury question during deliberations was plain error; and (4) that the verdict was not sustained by evidence of manifest weight and was a product of passion and prejudice. Plaintiff Stalla filed a timely cross-appeal challenging the denial of his motion to assess prejudgment interest.[2] Upon review we find neither O.B.T.'s assignments of error nor Stalla's cross-assignment have merit and we, therefore, affirm the judgment of the trial court.

Seventeen year C.E.I. employee Donald Stalla told the court that on Octoboer 7, 1980, he was assigned to install a shive roller on a utility pole located near a fence line between East 82nd and East 84th Streets. The work required Stalla to climb a pole jointly owned by C.E.I. and O.B.T.

Stalla explained that before ascending the pole on the day in question, he performed routine safety checks by inspecting the pole for decay, rot and weathering and by visually checking the climbing path on the pole for obstructions. He noted that the pole was somewhat weathered and decayed and that the climbing path appeared free of obstructions. Stalla described the safety equipment he wore when climbing, which included a safety helmet, safety-sun glasses and climbing boots equipped with metal gaffs which allowed him to ascend or descend the pole.

Watching his feet because the wood was old, Stalla went up the pole, climbed beyond O.B.T.'s equipment and completed his work atop the pole. On his way down, his right gaff hit some "bad" wood and Stalla slipped a few inches before his gaff came in contact with a metal hook. Stalla claimed that the metal to metal contact caused him to twist his ankle, fall left and out off the pole onto the ground, about eighteen feet below, thereby sustaining injuries. Stalla testified that he later re-checked the climbing path and noticed a discolored j-hook in the path near the O.B.T. equipment area.

In defense, O.B.T. theorized that Stalla descended through the non-climbing area and struck a j-hook located outside the climbing

path. O.B.T. maintained that because Stalla stated that he fell on "a peak of a garage" that he must have fallen from the non-climbing area of the pole.

In its first assigned error, O.B.T. maintains that the trial court's adjudication of its claims, against third-party defendant C.E.I., by summary judgment was error.

Before we address O.B.T.'s claimed errors, we must first address C.E.I.'s motion to dismiss O.B.T.'s appeal.[3] C.E.I. argues that the appeal must be dismissed as to it because O.B.T. failed to name C.E.I. in the notice of appeal and because O.B.T. failed to designate the summary judgment order as the subject of its appeal. We reject this contention.

App. R. 3(C) provides, in relevant part:

"Content of the notice of appeal. The notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken. The title of the case shall be the same as in the trial court with the designation of the appellant added, as appropriate. ***"

Strict compliance with this rule has been rejected by the supreme court in favor of a policy of liberal construction on procedural questions. *Maritime Manufacturing, Inc.* v. *Hi-Skipper Marina* (1982), 70 Ohio St. 2d 257. As we noted in *Melago* v. *Cardinal Industries* (Feb. 2, 1989), Cuyahoga App. No. 54989, unreported, lack of specificity in a notice of appeal does not deprive this court of jurisdiction, especially where the moving party demostrates no prejudice. *Id.* at 11. See, also, *Barksdale* v. *Van's Auto Sales, Inc.* (1988), 38 Ohio St. 3d 127.

The purpose of a notice of appeal is to apprise the opposite party of the taking of an appeal. *Hi-Skipper Marina, supra*, at 259. We note that the record reflects that C.E.I. was serveed with a timely notice of appeal. Cf. *Sapp* v. *Forest City Enterprises* (May 18, 1989), Cuyahoga App. No. 55300, unreported. (The omission of the appellant's name in a notice of appeal is not harmless error where the opposite parties were not served with notice). Further, the supreme court looks askance at dismissals granted for minor, technical violations of local rules. *National Mut. Ins. Co.* v. *Papenhagen* (1987), 30 Ohio St. 3d 14. O.B.T.'s notice substantially complies with the requirements of App. R. 3(C) and Local App. R. 3(B). See *Falasca* v. *Haas* (Dec. 1, 1983), Cuyahoga App. No. 46137, unreported. Because C.E.I. received

notice of the pendency of this appeal, we deny its motion to dismiss.

In January 1923, O.B.T. and C.E.I. entered into a Joint Pole Agreement ("the agreement") which established the rights and obligations of both parties with respect to utility poles jointly owned by them. O.B.T. claimed that the agreement required that C.E.I. indemnify O.B.T. for damages arising from Stalla's claimed injury. O.B.T. also alleged that C.E.I. breached the agreement by failing to maintain the pole.

C.E.I. moved the court for summary judgment on all counts of O.B.T.'s third-party complaint arguing that because C.E.I. was in compliance with Ohio workers' compensation laws it was immune from suit by a third-party seeking contribution or indemnification for claims involving injury to C.E.I. employees.

The immunity afforded an employer by the Ohio workers' compensation law may be waived. *Bevis* v. *Armco Steel* (1951), 156 Ohio St. 295. An employer who complies with the workers' compensation laws of this state, however, does not relinquish its statutory and constitutional immunity from suits arising out of employment without an express and specific waiver of that immunity. *Kendall* v. *U.S. Dismantling Co.* (1985), 20 Ohio St. 3d 61, paragraph two of the syllabus. A general indemnity agreement with a third party, absent a specific expression of the employer's intent to waive such immunity is ineffective for that purpose. *Id.* The *Kendall* court noted that this immunity is the backbone of the Workers' Compensation Act and held that workers' compensation immunity is not effectively waived "absent a clear evocation of the parties intent to that effect." *Id.* at 65 citing, *Davis* v. *Consolidated Rail Corp.* (1981), 2 Ohio App. 3d 475. See, also, *Taylor* v. *Academy Iron & Metal* (1988), 36 Ohio St. 3d 149. O.B.T. points out that subsequent decisions by the supreme court have found general indemnity agreements enforceable. In these cases, however, we note the absence of the specific public policy considerations present in cases involving workers compensation. See, *e.g., Worth* v. *Aetna Cas. & Sur. Co.* (1987), 32 Ohio St 3d 238; *Glaspell* v. *Ohio Edison* (1987), 29 Ohio St. 3d 44. Upon review we find no express and specific waiver of workers compensation immunity in the subject agreement and note that O.B.T. so conceded in its reply to C.E.I.'s summary judgment motion.

O.B.T. further argues that the court's grant of summary judgment on its claim for breach of contract was error. It claims that the breach of

contract claim was unrelated to its claim for indemnification and is, therefore, not barred by *Kendall* v. *U.S. Dismantling, supra.* Our review of the complaint reveals that O.B.T. sought damages from C.E.I. for breach of contract only in the event that O.B.T. was found liable to Stalla and that O.B.T. sought damages only in the amount of any such liability. O.B.T's second count merely re-phrased its indemnity claim. Accordingly, the trial court properly granted summary judgment on that count.

Next, O.B.T. maintains that the adjudication by summary judgment was error because C.E.I. and O.B.T. intended their agreement to include a waiver of immunity and that such intent was an issue of fact for a jury.

It is well-established that unsupported allegations in pleadings do not necessitate the denial of a summary judgment motion. *Benjamin* v. *Deffet Rentals* (1981), 66 Ohio St. 2d 86; *Harless* v. *Willis Day Warehousing* (1978), 54 Ohio St. 2d 64. Although evidence is considered in the light most favorable to the non-movant, when a summary judgment motion is supported by evidentiary materials establishing the absence of genuine issues of fact, the burden shifts to the non-movant. Civ. R. 56(E). See, also, *Mitseff* v. *Wheeler* (1988), 38 Ohio St. 3d 112; *Albritton* v. *Neighborhood Centers Assn.* (1984), 12 Ohio St. 3d 210. Moreover, an "appellant may not raise issues on appeal which he could have raised in the trial court if he had submitted evidence contrary to that submitted by appellee." *Stemen* v. *Shibley* (1982), 11 Ohio App. 3d 263, 269. Not having submitted affidavits or exhibits in the trial court in support of its claim that the parties intended to waive workers' compensation immunity in their agreement, O.B.T. may not now raise the issue for the first time on appeal. *Id.*

O.B.T. further maintains that the immunity provisions of the Workers' Compensation Act unconstitutionally impair the obligation of contract in its joint pole agreement. O.B.T. failed to raise and argue its constitutional claims in the trial court, merely noting in its brief in opposition to C.E.I.'s motion that it intended to raise this issue on appeal. This court need not consider an issue not raised below. *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 117 vacated on other grounds (1978), 438 U.S. 911; *Kalish* v. *Trans World Airlines* (1977), 50 Ohio St. 2d 73. A party who fails to directly raise the issue in the trial court forfeits its right to attack the constitutionality of a statute. *State* v. *Awan*

(1986), 22 Ohio St. 3d 120; *Kalain* v. *Smith* (1986), 25 Ohio St. 3d 157.

Accordingly, the first assignment of error fails.

In the second assignment of error O.B.T. challenges the consistency of the answers to special interrogatories submitted to the jury.

When a party raises an allegation of inconsistency in a jury's responses to interrogatories, a presumption arises "that the jury placed that construction upon the questions which makes the answers thereto harmonious with the verdict." *Midwest Specialties, Inc.* v. *Firestone Tire & Rubber Co.* (1988), 42 Ohio App. 3d 6, 10. See, also, *Klever* v. *Reid Bros. Express Co., Inc.* (1949), 151 Ohio St. 467. It is incumbent upon the party challenging a general verdict to demonstrate that the interrogatories considered as a whole are inconsistent and irreconcilable with the general verdict. *Becker* v. *BancOhio National Bank* (1985), 17 Ohio St. 3d 158; *Bauman* v. *Schmitter* (Oct. 26, 1989), Cuyahoga App. No. 56160, unreported.

O.B.T. claims that the jury finding that Stalla was negligent is inconsistent with finding that his negligence was not a proximate cause of his damages. The fact that the jury found Stalla negligent does not necessitate a finding that such negligence was the proximate cause of the damages. *Hollywood Cartage Co., Inc.* v. *Wheeling & Lake Erie Ry. Co.* (1949), 85 Ohio App. 183. Such a determination is not irreconcilable with the verdict herein. See *Klever, supra.*

Assuming *arguendo*, that the jury's answers were inconsistent O.B.T. would still be unsuccessful in its quest for a new trial because there is nothing in the record provided to this court to suggest that O.B.T. bought the alleged inconsistency to the attention of the trial court in accordance with Civ. R. 49(B). A party waives objection to inconsistent answers to interrogatories unless it interposes an objection before the jury is discharged. *Haehnlein* v. *Henry* (1987), 41 Ohio App. 3d 233.

The record provided for our review does not include a transcript of the proceedings after the court charged the jury. It is well-settled that the appellant has the duty to provide a transcript for our review. *Knapp* v. *Edward Laboratories* (1980), 61 Ohio St. 2d 197. When portions of the transcript necessary to resolve assigned errors are omitted from the record, an appellate court has nothing to pass upon and, therefore, has no alternative but to presume the regularity of the proceedings. *Id.; City of Columbus* v. *Hodge*

(1987), 37 Ohio App. 3d 68. Though O.B.T. may not have been able to supply a verbatim transcript of the necessary parts of the proceedings, other options were available, specifically, an App. R. 9(C) narrative transcript or an App. R. 9(D) agreed statement of the case. *Knapp, supra.* Nothing in the record indicates that O.B.T. attempted to avail itself of these alternatives. Therefore, even if we were to find that the jury's answers were inconsistent, we would have no alternative but to presume regularity and overrule the assignment of error.

Accordingly, the second assignment of error fails.

In its third assignment of error, O.B.T. challenges the court's reply to a jury question.

The jury requested an instruction defining proximate cause. The court responded, in writing, with the same definitional instruction it originally read to the jury. O.B.T. argues that the re-instruction constitutes plain error because the court did not also reiterate its instruction indicating that there can be more than one proximate cause.

During its original charge, the court instructed the jury on proximate cause and explained, somewhat later, that there can be more than one proximate cause. O.B.T. did not object to the charge though given the opportunity to do so. If O.B.T. believed that the court's charge was misleading, because the definitional instruction was not given together with the instruction indicating there can be several causes, O.B.T. had a duty to object at that time. See *State* v. *Blackwell* (1984), 16 Ohio App. 3d 100. Although O.B.T. found no fault with the court's charge at trial and does not now allege error in the original jury charge, O.B.T. contends that the court's reply to the jury question was so misleading we should find plain error.

"The plain error doctrine is utilized in civil matters only under exceptional circumstances to prevent a manifest miscarriage of justice." *Cleveland Elec. Illum. Co.* v. *Astorhurst Land Co.* (1985), 18 Ohio St. 3d 268, 275. See, also, *Reichert* v. *Ingersoll* (1985), 18 Ohio St. 3d 220. We do not find that this case presents the exceptional circumstances contemplated by the plain error rule. The court's reply was a correct statement of the law. See *Bier* v. *New Philadelphia* (1984), 11 Ohio St. 3d 134; *Piqua* v. *Morris* (1918), 98 Ohio St. 42, Cf. *Yungwirth* v. *McAvoy* (1972), 32 Ohio St. 2d 285; *State* v. *Maynard* (1987), 38 Ohio App. 3d 50; *State* v.

*Louis Williams* (Nov. 9, 1989), Cuyahoga App. No. 56152, ureported.

The third assignment of error is not well-taken.

In the fourth assignment of error, O.B.T. alleges that the verdict was not supported by the manifest weight of the evidence and that the jury's verdict was the product of passion and prejudice.

It is well-established that when a reviewing court is required to decide whether a verdict is supported by evidence of manifest weight, the court is guided by a presumption that the determination of the fact finder was indeed correct. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80. A judgment that is supported by "competent, credible evidence going to all the essential elements of a case will not be reversed" by an appellate court as against the weight of evidence. *C.E. Morris* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, syllabus.

In order to establish a cause of action in negligence the plaintiff must show that there exists a duty, a breach of duty and "an injury proximately resulting therefrom." *Menifee* v. *Ohio Welding Co.* (1984), 15 Ohio St. 3d 75 77.

O.B.T. conceded that it owed a duty of care to both C.E.I. and O.B.T. lineman. It now maintains that there was no competent, credible evidence supporting Stalla's claim that an abandoned j-hook constituted a breach of that duty of care.

Stalla testified that he had come in contact with many j-hooks while climbing utility poles, but he noted that such hooks were generally visible because they were connected by wires running from the pole to nearby houses. In this instance, he explained, the j-hook was not connected by wire to a house and therefore, could not readily be seen. Stalla told the court that linemen are trained to avoid such hazards, but that he did not see the hook. To avoid a hazard a pole climber can zig-zag or climb around an obstruction, but because such movement can be hazardous the climbing path is usually kept free of obstructions. Stalla also explained that when a metal gaff comes in contact with a metal object it causes slipping.

Thomas Cooney, a former O.B.T. lineman, stated that a j-hook presented no hazard to O.B.T. climbers but conceded that a hook could present a danger to persons climbing beyond the O.B.T. equipment area.

Thus, there was competent, credible evidence upon which the jury could have

determined that leaving an unused j-hook in the climbing path presented a risk of harm a reasonably prudent person would have anticipated was likely to cause injury.

O.B.T. argues that the evidence at trial leads to the conclusion that Stalla fell from the non-climbing side of the pole.

Stalla testified that he was in the climbing path when he fell and that as he fell he hit "a peak of a garage" and the fence. He denied falling from the east or non-climbing area. O.B.T. theorized that Stalla must have fallen from the east, outside the climbing area, in order to hit the peak of the garage or the fence.

This argument was presented to and apparently rejected by the jury. The resolution of conflicts in evidence is a question for the jury. *Hardiman* v. *Zep. Mfg. Co.* (1984), 14 Ohio App. 3d 222, 225. We see no reason to substitute our judgment for the fact finder's and decline to do so here.

O.B.T. next challenges the amount of the judgment maintaining that it was the product of passion or prejudice.

A new trial may be granted where excessive damages are awarded under the influence of passion or prejudice. *Cox* v. *Oliver Machinery Co.* (1987), 41 Ohio App. 3d 28. In a personal injury suit a verdict should not be set aside unless the damages awarded are so excessive that it appears the award is a result of passion or prejudice, or unless the damage award is so manifestly against the weight of the evidence that it appears the jury misconceived its duty. *Toledo, Columbus & Ohio River Rd. Co.* v. *Miller* (1923), 108 Ohio St. 388; *Cox, supra; Litchfield* v. *Morris* (1985), 25 Ohio App. 3d 42.

The record herein is devoid of any evidence that the jury was influenced by passion or prejudice. Moreover, the damage award is supported by the weight of evidence.

Evidence adduced at trial indicated that Stalla sustained a permanent mild bulging lumbar disc that will increase in severity with time. Though the initial diagnosis indicated a temporary injury, Stalla's physician stated that he now believed the injury was permanent.

At the time of the trial Stalla had an approximate life expectancy of 32 years. Less the stipulated special damages, the award translates into about $2,400 per year for the period of such life expectancy. In view of the uncontroverted evidence that Stalla has and will experience back and leg pain of increasing severity we cannnot say that the verdict is against the weight of evidence or that it

supports a findings that the jury was wrongfully influenced.

Accordingly, the fourth assignment of error fails.

In his cross-appeal, the plaintiff challenges the denial of his motion for prejudgment interest.

Evidence adduced at the hearing on the plaintiff's motion indicates that Stalla filed his complaint in negligence against O.B.T. in June 1982. O.B.T. denied liability and thereafter filed a third-party complaint against C.E.I. for indemnification and breach of contract in the event it was adjudicated liable. In November 1987 the trial court granted summary judgment for the third-party defendant. O.B.T. then deposed the plaintiff in April 1988 and a jury trial commenced in August of that year.

O.B.T. did not set up reserve fund to cover any potential liability expenses as it believed that it was not liable for Stalla's injury. Moreover, O.B.T. averred that until summary judgment was granted in C.E.I.'s favor, O.B.T. believed that C.E.I. was liable for any damages pursuant to the terms of their joint pole agreement.

Stalla originally sought $50,000 in compensatory damages but later increased the amount to $125,000. In November 1987 Stalla offered to settle for $75,000 and immediately before trial sought $15,000. O.B.T.'s highest settlement offer was $1,000.

Stalla maintains that O.B.T. failed to make a good faith effort to settle and that the trial court abused its discretion by refraining from awarding prejudgment interest.

Prejudgment interest is properly awarded where a party has failed to make a good faith effort to settle. R.C. 1343.03(C). Construing the "good faith effort to settle" language in the statute, the supreme court stated:

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Kalain* v. *Smith* (1986), 25 Ohio St. 3d 157, syllabus.

The decision as to whether a party's settlement efforts comport with the good faith

requirement is left to the sound discretion of the trial court. *Id.* at 159. See, also, *Worrell v. Multipress, Inc.* (1989), 45 Ohio St. 3d 241; *Cox v. Fisher Fazio Foods* (1984), 13 Ohio App. 3d. 336.

We find that there was sufficient evidence to support the judgment of the trial court and find no indication in the record that the court's decision was arbitrary or unreasonable.

Accordingly, the plaintiff's sole cross-assignment is overruled.

*Judgment affirmed.*

JOHN V. CORRIGAN, P.J.,
DAVID T. MATIA, J., CONCUR.

* (JUDGE THOMAS J. PARRINO, retired judge of the Eighth District Court of Appeals, sitting by assignment).

---

[1] See Appendix.
[2] See Appendix.
[3] Motion No. 90123.