**Joseph Frederick ROBARDS, Petitioner-Appellant,**

v.

**John REES, Superintendent, Kentucky State Reformatory and David L. Armstrong, Attorney General, Respondents-Appellees.**

No. 85–5529.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 23, 1985.

Decided April 25, 1986.

Rodney McDaniel (argued), Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, Ky., for petitioner-appellant.

Carl T. Miller, Jr. (argued), Asst. Atty. Gen., Frankfort, Ky., for respondents-appellees.

* The Honorable Julian Abele Cook, Jr., United States District Court for the Eastern District of Michigan, sitting by designation.

Before ENGEL and KENNEDY, Circuit Judges and COOK *, District Judge.

JULIAN ABELE COOK, Jr., District Judge.

This is an appeal from an order of the District Court which denied the petition for writ of habeas corpus of the Petitioner-Appellant, Joseph Frederick Robards (Robards), under 28 U.S.C. § 2254. For the reasons stated below, this Court affirms the order of the District Court.

### I.

Robards was indicted by a state grand jury on several counts which included robbery, possession of a handgun, and being a persistent felony offender. On the day of trial and after the clerk had called the roll of jurors, Robards requested an adjournment of the trial because his attorney, Willie E. Peale, had not properly represented him. According to Robards, Peale had failed to return his phone calls, apprise him of the law, or have "something [to] show" him. His request was denied. Robards responded: "Well Judge, if I am ready for trial, I ain't going with Mr. Peale." Immediately thereafter, Peale made a motion to dismiss on the ground that Robards had acted under duress during the robbery. The motion was denied. The judge, in a comment to Robards, said:

> I think you'd better get one thing straight in your head, Mr. Robards. I run this court, not you. Now we have heard your story and it doesn't hold water and you have had adequate representation from this man and he'll give you a good trial and we are going to go to trial today.

After the jury had been sworn and the prosecutor had completed his voir dire, Peale advised the judge, during a side bar conference, that Robards did not think he was ready for trial. The judge treated Peale's comment as a motion for a delay of the trial, denied the request, and then en-

gaged in the following exchange in the presence of the jury:

MR. ROBARDS:

Your Honor, may I say something?

JUDGE MEIGS:

You speak through your lawyer.

BENCH DISCUSSION:

MR. PEALE:

Your Honor, he has expressed a wish that he at this time no longer requires my services.

JUDGE MEIGS:

He is going to have your services for the balance of this trial, whether he wants them or not.

MR. PEALE:

Okay. I am just saying, noting it for the record that he did state that.

JUDGE MEIGS:

Motion by the defendant is overruled.

MR. PEALE:

Your Honor, could we approach the bench again.

JUDGE MEIGS:

I am not going to hear this same argument again.

MR. PEALE:

I understand the court's loss of patience with this matter but he has expressed a wish that he do it pro se and not with counsel.

JUDGE MEIGS:

You are going to sit and guide his hand.

MR. PEALE:

Okay, I'll assist him.

MR. ROBARDS:

He can't guide my hand for I don't want him.

JUDGE MEIGS:

Mr. Robards, sit down. We are going to start this trial.

MR. ROBARDS:

I want it to be known if he started this trial, it is going to be by myself because I don't want him.

JUDGE MEIGS:

He is going to be there to assist you. Sit down.

MR. ROBARDS:

I have the right to my own counsel.

JUDGE MEIGS:

Sit down, Mr. Robards or I'll have you saw [sic] down.

MR. PEALE:

Do you want to ask the questions?

MR. ROBARDS:

As of now, you are off of my case. I don't want no parts of you. If he wants to send me to trial, let him send me by myself because I haven't had correct time and haven't had effective assistance of counsel and I don't want to be bothered with it. I'll just take it by myself.

The jury was then excused for a brief recess. Immediately thereafter, Robards and Peale engaged in a bitter argument. At one point, Robards said: "I am going to trial by myself." The judge told Robards:

So you are just trying to make mountains out of mole hills. There is nothing more that a lawyer could have done that this man hasn't done for you based on what you have told him and what he has been able to investigate in the case.

The jury returned and the prosecutor called his first witness. Robards asked to approach the bench. The following discussion ensued:

MR. ROBARDS:

Judge, Your Honor, at this time, I'm getting me another lawyer and I don't want to be represented by Mr. Peale. I would appreciate it if you'd set me another date.

JUDGE MEIGS:

Overrule the motion. We are going to continue today.

MR. PEALE:

I would like to make a motion to withdraw.

JUDGE MEIGS:

Mr. Peale, I appreciate your position. I am asking you as an officer of the court to serve the court by guiding this man through trial. Overrule your motion.

MR. ROBARDS:

If he is going to be my counsel, I want the court to know that I am going to court by myself without a counsel.

JUDGE MEIGS:

He is going to be here to assist you.

MR. ROBARDS:

He can't be. I don't want him.

JUDGE MEIGS:

I have just made the ruling, Mr. Robards. Now sit down.

MR. ROBARDS:

Just take me on back because I ain't going to—

JUDGE MEIGS:

He doesn't have to remain. If he wants to go back, he can go back. He doesn't have to remain here.

MR. ROBARDS:

And I also want the court to know that I don't have no counsel because I am getting rid of Mr. Peale.

JUDGE MEIGS:

You are not getting rid of Mr. Peale. He is going to assist you under the orders of the court. Now sit down.

MR. ROBARDS:

You know, it is not right, Judge.

## II.

Kentucky separates trials under the persistent felony offender statute into two phases; to wit, the guilt innocence phase and the persistent felon phase. *See Hardin v. Commonwealth*, 573 S.W.2d 657, 661–62 (Ky.1978). During the guilt innocence phase of the trial, the prosecutor introduced evidence that Robards had a gun in his possession when he was arrested. The prosecutor also introduced evidence that Robards had been convicted of armed robbery on June 30, 1975. During the persistent felony phase of the trial, the prosecutor introduced evidence of Robards' convictions and sentences; to wit, (1) March 20, 1958: found guilty of Uttering a Forged Instrument on May 6, 1955 and sentenced to 3 years in custody; (2) October 20, 1967: found guilty of Armed Assault with Intent to Rob on September 4, 1964 and Armed Robbery on May 5, 1967

and sentenced to concurrent 10 year terms of imprisonment; (3) June 30, 1975: found guilty of Armed Robbery and sentenced to 30 year prison term, later commuted to 20 years as the result of an Executive Order on December 5, 1979. Robards was on parole when the instant offenses occurred.

The jury found Robards guilty of first degree robbery and possession of a handgun by a convicted felon. Since Robards had prior felony convictions, the jury also determined that he was a second degree persistent felony offender.

The Supreme Court of Kentucky affirmed Robards' convictions and held that his request to proceed *pro se* had not been timely filed. *Robards v. Commonwealth*, No. 82–SC–281–MR, slip op. at 3 (Ky. May 11, 1983). The Court stated that a defendant must assert the right of self-representation "before meaningful trial proceedings have commenced" and thereafter the exercise of the right "rests within the sound discretion of the trial court." *Id.* The Supreme Court of Kentucky continued:

When "meaningful trial proceedings have commenced" will, of course, vary from case to case. Our examination of the record in this case supports the conclusion that the appellant's request was untimely. The appellant was represented by retained counsel employed some three months prior to trial. At no time prior to the day of trial did the appellant suggest a desire to represent himself. It was only after his request for a continuance was denied that he pressed upon the trial court his desire to proceed *pro se*. At that juncture, voir dire had already begun, the trial court had ruled on two motions brought by the appellant, and the trial judge had spent a considerable amount of time discussing the case with the appellant in an effort to define the source of his dissatisfaction. Unquestionably, meaningful trial proceedings had commenced and therefore the decision whether to allow the appellant to proceed *pro se* was within the discretion of the trial court. A court should vigilantly protect a defendant's constitution-

al rights, but it was never intended that any of these rights be used as a ploy to frustrate the orderly procedures of a court in the administration of justice.

In our opinion, there was no abuse of discretion in the trial court's denial of the appellant's request of self-representation.

*Id.* at 3–4.

Robards petitioned the United States District Court for the Eastern District of Kentucky for a writ of habeas corpus. A Magistrate, to whom the matter had been referred, recommended denial of the petition. Robards objected. Nevertheless, the District Court adopted the Magistrate's Report, and dismissed Robards' petition.

### III.

Robards' appeal is now before this Court. Robards raises three issues: (1) Whether the state trial court deprived him of a constitutional right to conduct his own defense, (2) whether the use of his 1975 conviction of first degree robbery to establish the substantive offense of possession of a handgun by a convicted felon under Kentucky Revised Statute § 527.040 and to trigger an enhanced punishment under the persistent felony offender statute violated his constitutional guarantee against double jeopardy, and (3) whether his conviction as a persistent felony offender violated the Sixth and Fourteenth amendments because of the prosecutor's use of uncounseled prior felony convictions to support the conviction.

### A.

Robards says that he was improperly denied his constitutional right to conduct his own trial. He also argues that his request to proceed *pro se* was timely because it had been made before the trial began and before the jury was selected. Robards further contends that the District Court erred in finding that the Supreme Court of Kentucky had found that his request to proceed *pro se* was not in good faith. Finally, he asserts that even if the state court had reached such a conclusion,

it would not have been supported by the record. Robards relies upon *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), in which the Supreme Court, after recognizing that a criminal defendant in a state criminal trial has an independent constitutional right of self-representation, held that such an accused may proceed without counsel when he voluntarily and intelligently elects to do so. *Id.* at 807, 95 S.Ct. at 2527. Robards also relies upon several cases which hold that a defendant makes a timely request to proceed *pro se* if it is done prior to the jury being selected or sworn. *See Chapman v. United States*, 553 F.2d 886, 887 (5th Cir.1977); *United States v. Price*, 474 F.2d 1223, 1227 (9th Cir.), *reh'g denied*, 484 F.2d 485 (9th Cir.1973); *United States v. Dougherty*, 473 F.2d 1113, 1124 (D.C.Cir.1972); *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 16 (2d Cir.1965), *cert. denied*, 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966). It should be noted that these cases also recognize an exception when the prosecution makes an affirmative showing that the defendant's request for self-representation is merely a tactic to secure a delay in the proceeding.

The instant case is inapposite to *Faretta, supra,* where "weeks before trial, [the Defendant] clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." 422 U.S. at 835, 95 S.Ct. at 2541. The record affirmatively showed "Faretta as literate, competent, and understanding, and that he was voluntarily exercising his informed free will." *Id.* Thus, in *Faretta,* the defendant had a genuine inclination to conduct his own defense, and demonstrated an ability to do so.

Here, Robards invoked his right of self-representation on the day of trial, after the clerk had called the roll of jurors. Robards admitted that Peale had made three trips to visit him in prison. Moreover, Peale noted that Robards had not expressed any displeasure with the quality of his attorney's efforts prior to the day of trial. The record also indicates that Robards told the trial

court: "I don't know nothing about the law." Although "technical legal knowledge, as such, [is] not relevant to an assessment of [Robards'] knowing exercise of the right to defend himself," *Faretta v. California*, 422 at 836, 95 S.Ct. at 2541, Robards, by his own admission, did not have the ability to effectively conduct his defense. Clearly, Robards neither exhibited a genuine inclination to conduct his own defense nor manifested an ability to do so.

■ This Court also concludes that Robards' request for self-representation, if honored, would have impermissibly delayed the commencement of the trial. The clerk had called the roll of jurors before Robards made his request for self-representation. Had the request been granted, the trial judge would have been obliged to postpone the commencement of the trial for an extended period of time in order to allow Robards a sufficient amount of time to prepare his defense. It was within the discretion of the trial judge to deny Robards' request. His denial was not an abuse of discretion. Moreover, this Court believes that this denial by the state court was not tantamount to a constitutional violation.

### B.

Robards argues that the prosecutor's use of his June 30, 1975 conviction to establish the substantive offense of Section 527.040 of the Kentucky Revised Statutes (to wit, possession of a handgun by a convicted felon) and to trigger an enhanced punishment under Kentucky's persistent felony offender statute (to wit, Section 532.080), violated his constitutional guarantee against double jeopardy. Robards claims that Kentucky law does not permit a prosecutor to use the same prior felony conviction during a single trial for the dual purpose of establishing a substantive offense and enhancing punishment under the persistent felony statute. He cites *Boulder v. Commonwealth*, 610 S.W.2d 615 (Ky.1980); *Jackson v. Commonwealth*, 650 S.W.2d 250 (Ky.1983); and *Eary v. Commonwealth*, 659 S.W.2d 198 (Ky.1983).

In *Boulder v. Commonwealth, supra*, at 618, the Supreme Court of Kentucky held that the prosecutor could not use a defendant's status as a felon, which established the substantive offense of possession of a handgun by a convicted felon, to trigger an enhanced punishment by the persistent felony offender statute. In *Jackson v. Commonwealth, supra*, at 251 (emphasis in original), the Court refused to extend its holding in *Boulder*, stating that "when a single prior felony is utilized to create an offense or enhance a punishment at the trial of the second crime so created or enhanced, it may not be used *at that trial* to prosecute the defendant under KRS 532.080." The *Jackson* Court held that a previous conviction for possession of a handgun by a convicted felon may be used in the persistent felony offender phase of a trial because that previous conviction assumes the status of any other offense at a subsequent trial. *Id.* at 251–52. In *Eary v. Commonwealth, supra*, at 200, the court repeated that clarification by stating that when a defendant is convicted for possession of a handgun by a convicted felon and when that defendant has been previously convicted of more than one prior felony, the "convictions in excess of that for a single felony may be utilized for the purpose of persistent felony offender sentencing pursuant to KRS 532.080."

Robards submits that his 1975 felony conviction was the only offense which fell within the five year limitation period. Although Robards was discharged from prison by parole on January 12, 1972 for his 1967 convictions, he was returned to custody on July 2, 1975 as a parole violator. Robards' return to prison on the new sentence for the 1975 conviction automatically revoked his parole on the 1967 convictions. Robards completed serving his sentences for the 1967 and 1975 convictions when he was discharged on December 16, 1978, at the minimum expiration of the sentence for his 1975 conviction. Since the events, which lead to his conviction on first degree robbery and possession of a handgun by a convicted felon charges, occurred on Au-

gust 20, 1981, the 1967 convictions satisfied the five year limitation period under Section 532.080(3)(c)1. of the Kentucky Revised Statutes. Accordingly, the enhanced punishment under the persistent felony offender statute did not constitute double jeopardy.

### IV.

Robards contends that his conviction under the persistent felony offender statute violated the Sixth and Fourteenth Amendments of the United States Constitution because it was based on uncounseled prior convictions. During the trial, Betty Lou Vaughn, the custodian of records for the Kentucky Department of Corrections, testified that neither of the judgments from Jefferson County indicated if Robards had been, or had not been, represented by counsel. Immediately thereafter, Peale moved to dismiss the charges because Robards had not been represented by counsel. His motion was denied.

In *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1969), the Supreme Court held that a state cannot use a felony conviction that was obtained in violation of a defendant's right to counsel to enhance the punishment for another offense. *See Baldasar v. Illinois,* 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169, *reh'g denied,* 447 U.S. 930, 100 S.Ct. 3030, 65 L.Ed.2d 1125 (1980) (state cannot use an uncounseled misdemeanor conviction to convert a subsequent misdemeanor into a felony with a prison term under an enhanced penalty statute). In *United States v. Lufman,* 457 F.2d 165 (7th Cir.1972), the Seventh Circuit reversed the defendant's conviction under 18 U.S.C.App. § 1202(a), which made it unlawful for a convicted felon to possess a firearm, because the government had failed to establish that the defendant was represented by counsel during a 1938 conviction. The court stated:

> The government argued below that "[s]ince the record of defendant's prior felony conviction neither substantiates nor contradicts the defendant's contention the government demands that defendant be held to strict proof of his allegations and that he carry the burden of proof which he has in the first instance. ..."

This is incorrect. Once a defendant raises the constitutional invalidity of a prior conviction, the government has the heavy burden of proving absence of constitutional defect or waiver of rights.... When the record of a prior conviction is silent as to the presence of counsel, it is presumed that the Sixth Amendment rights of the defendant have been violated. The government must affirmatively prove otherwise....

*Id.* at 166–67 n. 2 (citations omitted); *see also Golden v. Newsome,* 755 F.2d 1478, 1479–80 n. 3 (11th Cir.1985); *Ingram v. Wingo,* 320 F.Supp. 1032, 1034 (E.D.Ky. 1971). However, in *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the Supreme Court implicity overruled *Lufman* by holding that the United States could use a prior uncounseled state court felony conviction as a predicate for a subsequent conviction under 18 U.S.C.App. § 1202(a)(1).

Moreover, *Lufman* is distinguishable from the instant case. In *Lufman,* the docket entries of the 1938 conviction were silent as to whether the defendant was, or was not, represented by counsel. The defendant submitted an affidavit, which attested that he was unrepresented by counsel and had not been advised of his right to have legal representation at, or prior to, the time of his guilty plea. Lufman's 1938 conviction occurred before *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Here, Robards relies only upon the silence of the record. There is no evidence that he submitted, or attempted to submit, an affidavit or any other sworn claim which would attest that he was unrepresented by counsel during any of the trials that resulted in a conviction. Robards was convicted of two felonies in 1967, four years after *Gideon.* Thus, although the Seventh Circuit could have justifiably assumed that the defendant in *Lufman* had been denied a constitu-

tional right, we, however, cannot make the same assumption. In *Phillips v. Commonwealth*, 559 S.W.2d 724, 725 (Ky.1977), the Supreme Court of Kentucky observed that "our experience over the last thirty years in the Kentucky legal system convinces this court that substantially all indigent criminal defendants accused of felony were provided counsel in this state long before *Gideon*...."

Finally, we note that Kentucky has a procedure of dealing with claims which assert the constitutional infirmity of a prior conviction. The validity of a prior conviction must be challenged in a pretrial motion. *See Commonwealth v. Gadd*, 665 S.W.2d 915, 916 (Ky.1984). Thus, the trial court properly refused to allow Robards' attack during the persistent felony offender phase of a trial. *Id.; Diehl v. Commonwealth*, 673 S.W.2d 711, 713 (Ky.1984). Robards had not complied with that procedure.

Accordingly, the judgment of the District Court is affirmed.