THE STATE OF OHIO, APPELLEE, *v.* MAYNARD, APPELLANT.

(No. 51994—Decided
April 6, 1987.)

APPEAL: Court of Appeals for
Cuyahoga County.

*John T. Corrigan,* prosecuting attorney, and *Paul J. Myles,* for appellee.

*Jeffrey L. Kocian* and *Thomas M. Shaughnessy,* for appellant Lewis Maynard.

MARKUS, C.J. Defendant appeals his jury trial conviction for aggravated robbery, and the court's decision to enhance his sentence for a prior aggravated felony conviction. His counsel complains that (a) the verdict was contrary to the manifest weight of the evidence, and (b) the court enhanced his sentence without proof that he had counsel or waived counsel for the charge which produced the prior conviction.

In a separate *pro se* brief, the defendant argues that the court erred by (a) communicating with the jury when he and his counsel were absent, and (b) accepting a guilty verdict for aggravated robbery after it dismissed a penalty enhancement specification for possessing a firearm. All these contentions lack merit, so we affirm the trial court's judgment.

I

The state charged that the defendant robbed a convenience store at approximately 5:45 p.m. on Thanksgiving Day. The cashier testified that a man entered the store and purchased a soft drink. As that man left, another man entered, whom the cashier later identified as the defendant. The defendant told the first man to wait outside. Meanwhile a fourteen-year-old customer left, so the defendant was alone with the cashier.

The cashier recalled that the defendant had been in the store once before. On this occasion, the defendant was wearing a woman's blond wig, a ski cap, and heavy eye makeup. The defendant put a handgun in the cashier's side and demanded the money in the cash drawer. The cashier gave him the money, and the robber ran from the store. The cashier then pressed an alarm button to summon police and telephoned the store manager.

The fourteen-year-old boy generally corroborated the cashier's testimony about the robber's appearance, but he could not identify the defendant as the robber. The boy was confident that the robber was a man because the robber had a three- to four-day growth of facial hair. Moreover, the boy found the robber's wig and ski cap a few blocks from the store in the direction that the robber had fled. The store manager testified that the cash register was $72 short when he arrived.

The defense sought to discredit the cashier's identification of the robber by showing that the cashier had difficulty in describing the robber to the police. However, the cashier selected the defendant's photograph from three pictures which an officer showed him about ten days after the robbery. Additionally, the cashier definitely identified the defendant as the robber at the defendant's preliminary hearing and at the trial.

The defendant's mother and sister testified that the defendant was playing cards with his sister and brothers at his mother's home when the robbery occurred. His mother said that she watched television while the defendant played cards in an adjoining room from 4:00 p.m. until after 10:00 p.m. His sister said that she played cards until approximately 6:00 p.m., and returned at 8:00 p.m. to find the defendant still playing. The store is approximately one mile from the defendant's mother's home.

Outside the jury's hearing, the de-

fense stipulated that the defendant had been convicted of the prior aggravated robbery charged in the indictment's penalty enhancing specification.

## II

In his first assigned error, the defendant's counsel asserts that the verdict was contrary to the manifest weight of the evidence. More specifically, the defendant argues that his alibi witnesses were more credible than the evidence which identified him as the robber.

The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State* v. *DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. The jury was free to believe all, part, or none of each witness's testimony. *State* v. *Antill* (1964), 176 Ohio St. 61, 67, 26 O.O. 2d 366, 369, 197 N.E. 2d 548, 553. A reviewing court should not disturb a verdict as being contrary to the weight of the evidence where substantial competent, credible evidence supports that verdict. Cf. *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80, 82, 10 OBR 408, 411, 412-413, 461 N.E. 2d 1273, 1276, 1278.

We cannot say that the cashier's identification was basically untrustworthy. Any inconsistencies in the state's evidence did not make it fundamentally incredible. Cf. *State* v. *Mattison* (1985), 23 Ohio App. 3d 10, 15, 23 OBR 43, 47, 490 N.E. 2d 926, 930; *State* v. *Harris* (Jan. 15, 1987), Cuyahoga App. No. 51559, unreported, at 6.

The defendant's sister and mother had an apparent bias for the defense. Moreover, his sister did not see him for two hours, beginning at the approximate time when the robbery occurred. His mother vouched for his presence during the time that she sat in an adjoining room. Neither of them told the police that the defendant was with them, after the police arrested him. The jury could properly reject the alibi testimony and believe the cashier's identification. The defendant's first contention lacks merit.

## III

Defense counsel next contests the use of a prior conviction to enhance the defendant's sentence, without proof that he had a lawyer then. He relies on this court's decision in *State* v. *McKinley* (Feb. 6, 1986), Cuyahoga App. No. 50016, unreported, reversed on other grounds (1986), 24 Ohio St. 3d 208, 24 OBR 434, 494 N.E. 2d 1113.

This court remanded *McKinley* for resentencing because the record failed to show that the defendant was afforded his right to counsel for the prior offense. The Supreme Court's reversal of this court's decision in the *McKinley* case, albeit on other grounds, greatly reduces its significance. Hence, we do not disturb our preference for consistency by reconsidering the language used in the *McKinley* opinion.

As we said in *McKinley*, an uncounseled conviction cannot ordinarily serve to enhance the penalty for a later conviction. See *United States* v. *Tucker* (1972), 404 U.S. 443, 447-448. Further, a silent record cannot establish that the defendant waived his right to counsel. *Boykin* v. *Alabama* (1969), 395 U.S. 238, 242.

However, the defendant has the burden of challenging an apparently constitutional prior conviction with some evidence that he was not afforded his right to counsel. Cf. *Robards* v. *Rees* (C.A. 6, 1986), 789 F. 2d 379, 385-386; *State* v. *Wang* (Jan. 25, 1984), Hamilton App. No. C-830287, unreported, at 6-7; *State* v. *Roundtree* (June 16, 1983), Cuyahoga App. Nos. 45683, 45755 and 45756, unreported, at 14-16. If the defendant raises that

issue with some evidence, the state has the burden of proving the constitutional validity of the prior conviction. A silent record will not satisfy the state's burden of proof. *Id.*

In this case, the indictment charged an earlier aggravated robbery conviction as a basis for penalty enhancement, pursuant to R.C. 2929.11 (B)(1)(b). The state can prove an enhancing conviction with a certified copy of the prior judgment and evidence which identifies the defendant as that offender. R.C. 2945.75(B). Defense counsel's stipulation that the defendant had been convicted of the earlier aggravated robbery was equivalent to the proof authorized by R.C. 2945.75(B). The defense presumably chose that procedure so that the jury would not hear testimony that the defendant committed an earlier aggravated robbery.

Absent any evidence that the state obtained the prior conviction unconstitutionally, compliance with R.C. 2945.75(B) can support penalty enhancement under R.C. 2929.11(B) (1)(b). This defendant offered no evidence in the trial court that his prior conviction was constitutionally infirm, as uncounseled or otherwise. Indeed, the defense made no such claim at the trial. Therefore, the state had no further burden to show the constitutional validity of the previous conviction.

A contrary rule would permit the defense to suggest numerous constitutional defects on appeal, without asserting them in the trial court. In that event, the state would have to disprove all possible constitutional defects for the prior conviction, in order to uphold the penalty enhancement. For example, the defendant could contest the penalty enhancement on appeal because the state failed to show that his guilty plea in a prior case was voluntary. He might also avoid enhancement by arguing on appeal that the state failed to prove his lawyer gave him effective assistance in the earlier case.

To the extent that this ruling differs from language in *McKinley,* we adhere to our earlier decision in *State* v. *Roundtree, supra,* and modify the *McKinley* rule accordingly. We overrule defense counsel's second assigned error.

## IV

In his *pro se* brief, the defendant first complains that the court instructed the jury when neither the defendant nor his counsel was present. After the jury began deliberating, the forelady sent the court a note: "The jury respectfully requests that you redefine the parameters of 'reasonable doubt.'" In response, the court entered the jury deliberation room with the court reporter, but without the defendant or counsel for either side. The record reflects that the court then reread the statutory definition which it had read in its original charge, without further amplification or explanation.

The defendant did not object to the language of that instruction when the court read it initially, and does not now object to its language. His sole objection is that the court read it to the jury on the second occasion, when neither he nor his counsel was present. We strongly discourage the court from entering the jury deliberation room for any purpose, and from communicating with jurors unless all parties are properly represented. Cf. *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 285-287, 6 OBR 345, 348-350, 452 N.E. 2d 1323, 1329-1331.

However, the court's error was harmless in this instance. The mere rereading of an unchallenged instruction in the absence of counsel or parties constitutes harmless error, where the record contains that entire un-

contested communication. See *State* v. *Abrams* (1974), 39 Ohio St. 2d 53, 56, 68 O.O. 2d 30, 32, 313 N.E. 2d 823, 825-826. Consequently, this contention does not justify a retrial.

## V

The defendant's second *pro se* contention disputes the aggravated robbery conviction, in light of the court's dismissal of a firearm penalty enhancing specification. As the trial court explained, the firearm penalty enhancing specification requires proof that the robber had an operable firearm. R.C. 2929.71; 2923.11(B). Cf. *State* v. *Boyce* (1985), 21 Ohio App. 3d 153, 154, 21 OBR 163, 164, 486 N.E. 2d 1246, 1247-1248; and *State* v. *Lamb* (Oct. 2, 1986), Cuyahoga App. No. 51038, unreported, at 4-5. However, an aggravated robbery conviction does not require that type of proof.

The jury found the defendant guilty of aggravated robbery, by committing a theft offense when he had a deadly weapon on or about his person. R.C. 2911.01(A). For this purpose, the state need not prove that the weapon was capable of firing a projectile. *State* v. *Vonderberg* (1980), 61 Ohio St. 2d 285, 15 O.O. 3d 349, 401 N.E. 2d 437, syllabus. A robber's use of an unloaded handgun subjects him to conviction for aggravated robbery. *State* v. *Meek* (1978), 53 Ohio St. 2d 35, 7 O.O. 3d 121, 372 N.E. 2d 341, syllabus. An inoperable handgun can be a deadly weapon. *State* v. *Marshall* (1978), 61 Ohio App. 2d 84, 86, 15 O.O. 3d 93, 94, 399 N.E. 2d 112, 113. Indeed, a toy handgun can be a deadly weapon for the purposes of this offense. *State* v. *Hicks* (1984), 14 Ohio App. 3d 25, 26, 14 OBR 29, 29-30, 469 N.E. 2d 992, 993-994.

Therefore, we overrule this last assigned error and affirm the defendant's conviction.

*Judgment affirmed.*

DYKE and CORRIGAN, JJ., concur.

CORRIGAN, J., concurring. In writing the opinion in *State* v. *McKinley* (Feb. 6, 1986), Cuyahoga App. No. 50016, unreported, reversed on other grounds (1986), 24 Ohio St. 3d 208, 24 OBR 434, 494 N.E. 2d 1113, we were not attempting to formulate a new rule. In fact, we pointed out that the reasoning employed in the decision be viewed with caution. *Id.* at 14. Upon further reflection, we now believe that the United States Sixth Circuit's analysis in *Robards* v. *Rees* (C.A. 6, 1986), 789 F. 2d 379, provides a basis for changing our position.

In a well-reasoned opinion, the Sixth Circuit concluded that (1) a silent record alone does not compel the conclusion that a defendant was unrepresented, and (2) such an argument can be waived if not properly and timely asserted by the defendant. Robards relied only upon the silence of the record. No evidence was submitted, or attempted to be submitted, by way of an affidavit or other sworn claim which would attest that he was not represented by counsel. *Id.* at 385. With such a record, the Sixth Circuit concluded that the court could not justifiably assume that the defendant had been denied a constitutional right. In the instant case, the issue was raised for the first time on appeal. With the advancement in the protection of the rights of an accused over the past twenty-five years, the presumption is great that substantially all indigent criminal defendants accused of a felony have been provided counsel in this state. The claim of a constitutional infirmity initially should be asserted by an accused in the trial court, providing an opportunity for that court to examine and rule on the issue.

The constitutional right to counsel is not affected by this decision and remains inviolate. Any felony conviction

obtained in violation of a defendant's right to counsel cannot be used to enhance the punishment for another offense. The court in *Robards* relied on the conclusion that *Lewis* v. *United States* (1980), 445 U.S. 55, impliedly overruled *United States* v. *Lufman* (C.A. 7, 1972), 457 F. 2d 165. While the United States Supreme Court stated that a state conviction obtained without counsel could be the basis for a subsequent conviction for having a weapon as a convicted felon, the court in no way overruled its holdings in *Burgett* v. *Texas* (1967), 389 U.S. 109; *Gideon* v. *Wainwright* (1963), 372 U.S. 335, 23 O.O. 2d 258; or *United States* v. *Tucker* (1972), 404 U.S. 443.