JOURNAL ENTRY and OPINION.
{¶ 1} The applicant, Clarence Mack, pursuant to App.R. 26(B), has applied to reopen this court's judgment in State of Ohio v. Clarence Mack
(Jan. 4, 1994), Cuyahoga App. No. 62366, affirmed 73 Ohio St.3d 502,1995-Ohio-273, 653 N.E.2d 329, certiorari denied (1996), 516 U.S. 1096,133 L.Ed.2d 766, 116 S.Ct. 822, which affirmed Mr. Mack's conviction for aggravated robbery, aggravated murder and the death sentence. The State of Ohio has filed its memorandum in opposition. For the following reasons, this court denies the application.
 {¶ 2} The evidence at trial showed that Mr. Mack and several accomplices resolved to steal a car on the evening of January 21, 1991. They confronted Peter Sanelli in his car as he was leaving his business. When he locked the car doors, Mr. Mack discharged his gun several times and killed Mr. Sanelli. Mr. Mack and his accomplices then removed the body and stole the car, which one of the accomplices wrecked shortly thereafter. They related what happened to an acquaintance, Mr. Willis, and he provided the police with sufficient information to arrest Mr. Mack and the other accomplices several days later. At the time of the arrest, Mr. Mack was carrying the murder weapon.
 {¶ 3} After the jury convicted Mr. Mack and he was sentenced to death, he appealed and raised twenty-seven assignments of error. The assignment of error challenging the death penalty included thirteen issues. The appeal to the Supreme Court of Ohio raised twenty-eight propositions of law. In 1996, Mr. Mack filed a postconviction relief petition arguing ineffective assistance of trial counsel on various grounds. This court affirmed the denial of the postconviction relief petition in State of Ohio v. Clarence Mack (2000), Cuyahoga App. No. 77459. Accordingly, Mr. Mack has already presented many arguments to the courts.
 {¶ 4} In this application to reopen, Mr. Mack argues that his appellate counsel were ineffective for failing to argue (1) prosecutorial misconduct, (2) improper jury instructions, (3) ineffective assistance of trial counsel, (4) multiple errors committed by the trial judge, and (5) the unconstitutionality of Ohio's death penalty scheme. Under each of these assignments of error, Mr. Mack includes multiple arguments and issues.
 {¶ 5} Res judicata properly bars this application. See, generally, State v. Perry (1967), 10 Ohio St.2d 175, 226 N.E.2d 104. Res judicata prevents repeated attacks on a final judgment and applies to all issues which were or might have been litigated. In State v. Murnahan
(1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, the Supreme Court ruled that res judicata may bar a claim of ineffective assistance of appellate counsel unless circumstances render the application of the doctrine unjust.
 {¶ 6} When Mr. Mack appealed to the Supreme Court of Ohio, he explicitly argued that his appellate counsel were ineffective. This court has consistently held that such appeals bar claims of ineffective assistance of appellate counsel based on the principles of res judicata.State v. Kaszas (Sept. 21, 1998), Cuyahoga App. Nos. 72546 and 72547, reopening disallowed (Aug. 14, 2000), Motion No. 16752; State v. Bussey
(Dec. 2, 1999), Cuyahoga App. No. 75301, reopening disallowed (Aug. 8, 2000), Motion No. 16647 and State v. Bluford (Dec. 9, 1999), Cuyahoga App. No. 75228, reopening disallowed (May 31, 2000), Motion No. 15241.
 {¶ 7} Moreover, many of Mr. Mack's arguments in this application are variants of arguments he has already fully litigated. Thus, the following arguments are barred by res judicata:
(1) The prosecutor improperly argued that the aggravated murder was an aggravating circumstance to be considered by the jury in its weighing process.
(2) The prosecutor improperly argued the victim impact statement.
(3) The prosecutor misled the jury and minimized the jury's sense of duty by arguing that the sentencing verdict was only a recommendation.
(4) The prosecutor improperly, illegally, and unconstitutionally withheld exculpatory, impeachment and/or mitigation evidence, Mr. Willis' statement, from the defense.
(5) The trial court denied his motion for discovery and inspection of police reports, including witness statements.
(6) The trial court improperly instructed the jury to reject a death sentence before considering a sentence of life in prison.
(7) The trial court improperly instructed the jury on unanimity during the sentencing phase.
(8) The trial court improperly instructed the jury regarding reasonable doubt at the sentencing phase.
(9) The trial court improperly instructed the jury on the aggravating circumstances in this case.
(10) The trial court improperly refused to give lesser included instructions for murder and/or manslaughter, and proper instructions for specific intent.
(11) The trial court failed to apply the correct standard during voir dire to challenges pertaining to juror's views about the death penalty.
(12) The trial court repeatedly erred by using the term "recommendation" in describing the jury's sentencing verdict.
(13) The trial court failed to prevent the admission and use of victim impact evidence during the sentencing phase.
(14) The trial court erred in admitting the autopsy photographs during the sentencing phase.
(15) The trial court improperly determined that Mr. Mack would be sentenced to death before conducting the sentencing hearing.
(16) Ohio's proportionality and appropriateness review denies a defendant due process and equal protection and fails to guard against arbitrary and capricious death sentences.
(17) The trial court erred in allowing the hearsay testimony involving Mr. Willis and Mr. Anthony Sanelli and in otherwise violating the Confrontation Clause.
(18) Trial counsel was ineffective for not calling other alibi witnesses.
(19) The trial court erred in excluding the testimony of Carol Mancini and Curtis Mack.
(20) Ohio's death penalty scheme is unconstitutional.
 {¶ 8} Under these circumstances the application of res judicata would not be unjust.
 {¶ 9} Nevertheless, this court will also examine Mr. Mack's other arguments which are not specifically barred by res judicata.
 {¶ 10} In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668,80 L.Ed.2d 674, 104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
 {¶ 11} In Strickland, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland,104 S.Ct. at 2065.
 {¶ 12} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The Court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes (1983), 463 U.S. 745,77 L.Ed.2d 987, 103 S.Ct. 3308, 3313. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in State v. Allen, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.
 {¶ 13} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.
 {¶ 14} Mr. Mack argues that the jury selection was fatally flawed because the prosecutor discriminated by using peremptory challenges to exclude women and African-Americans from the jury. In Batson v. Kentucky
(1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, the United States Supreme Court ruled that the Equal Protection Clause prohibits prosecutors from removing even a single venireman because of their race. The Court formulated the following principles for testing a peremptory challenge. First, the defendant must make a prima facie case of purposeful discrimination. The defendant must show that he is a member of a cognizable racial group and the prosecutor has used a peremptory challenge to remove a venireman of the same racial group. The defendant should also show that other relevant circumstances raise an inference that the prosecutor is engaging in purposeful discrimination. The prosecutor must then give a neutral explanation for challenging the juror; this explanation need not rise to the level of challenge for cause. Finally, the judge must determine, based on all relevant circumstances, whether the defendant has established purposeful discrimination. Moreover, the Court noted that because the trial judge's findings on the proper exercise of peremptory challenges will largely turn on evaluation of credibility, a reviewing court should give those findings great deference. The Supreme Court extended these principles inJ.E.B. v. Alabama (1994), 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 to the area of sexual discrimination.
 {¶ 15} After reviewing the voir dire, this court rules that appellate counsel in the exercise of reasonable professional judgment could conclude that this was not a winning argument and, thus, could properly omit it. All of the circumstances did not indicate that the prosecution was engaging in racial discrimination. When Mr. Mack made aBatson challenge, the prosecution gave a neutral explanation for the challenge. The trial court noted that there were three African-Americans on the jury. As the Supreme Court of Ohio noted in State v. White,85 Ohio St.3d 433, 1999-Ohio-281, 709 N.E.2d 140, although the presence of African-Americans on a jury certainly does not preclude a finding of discrimination, the trial court may consider that fact as evidence that the State is not trying to exclude members of a particular race.
 {¶ 16} More importantly in the present case, after Mr. Mack'sBatson challenge, the trial judge stated that he was carefully examining the voir dire to ensure that the State abided by Batson; he then ruled that he saw no discrimination. The record supports that conclusion. Given the deference that a reviewing court must give such rulings, appellate counsel was not deficient for not raising any Batson arguments.
 {¶ 17} Moreover, appellate counsel was not deficient for not raising the issue of sexual discrimination in selecting the jury. Appellate counsel is not deficient for failing to anticipate developments in the law or failing to argue such an issue. State v. Williams (1991),74 Ohio App.3d 686, 600 N.E.2d 298; State v. Columbo (Oct. 7, 1987), Cuyahoga App. No. 52715, reopening disallowed (Feb. 14, 1995), Motion No. 55657; State v. Munici (Nov. 30, 1987), Cuyahoga App. No. 52579, reopening disallowed (Aug. 21, 1996), Motion No. 71268, at 11-12: "appellate counsel is not responsible for accurately predicting the development of the law in an area marked by conflicting holdings." Statev. Harey (Nov. 10, 1997), Cuyahoga App. No. 71774, reopening disallowed (July 7, 1998), Motion No. 90859; State v. Sanders (Oct. 20, 1997), Cuyahoga App. No. 71382, reopening disallowed, (Aug. 25, 1998), Motion No. 90861; State v. Bates (Nov. 20, 1997), Cuyahoga App. No. 71920, reopening disallowed (Aug. 19, 1998), Motion No. 91111; and State v.Whittaker (Dec. 22, 1997), Cuyahoga App. No. 71975, reopening disallowed, (July 28, 1998), Motion No. 92795. In the present case, appellate counsel submitted the brief on August 3, 1992. This court heard oral argument on August 4, 1993 and journalized its decision on January 4, 1994. The Court did not decide J.E.B. v. Alabama until April 19, 1994. As the Court's opinion makes abundantly clear, the issue of whetherBatson extended to the area of sexual discrimination was not clear until that day. Accordingly, appellate counsel in the present case had no duty to raise it.
 {¶ 18} Under the general argument of prosecutorial misconduct, Mr. Mack first argues that the prosecutor improperly belittled defense counsel and so deprived him of a fair trial. In the subject incident, the prosecutor responded to defense counsel's closing argument by stating that defense counsel "tries to minimize." The prosecutor then conceded that defense counsel was right that there was only one aggravating circumstance. The transcript does not show that the prosecutor was improperly belittling defense counsel. This court will not second guess the decision to omit this argument.
 {¶ 19} Mr. Mack also argues that the prosecutor endeavored to shift the burden of proof to the defense during closing argument by stating, "now the defense has to try and fill these holes, all these holes in this, in their case." (Tr. 1057.) Mr. Mack presented an alibi defense through the testimony of friends and relatives. In his closing the prosecutor reviewed and examined each witness. In examining the defense's case, he consistently used the image of filling holes as a means of analyzing the evidence. He did not endeavor to shift the burden of proof. In fact, he concluded by affirming the State's duty to prove every element of the crime beyond a reasonable doubt. Moreover, a prosecutor may point out incredible testimony and inconsistencies in a defense case. He may comment upon the testimony and suggest the conclusions to be drawn. State v. Ross (1999), 135 Ohio App.3d 262,733 N.E.2d 659 and State v. Draughn (1992), 76 Ohio App.3d 664,602 N.E.2d 790. In using the image of filling holes, the prosecutor did just that. Therefore, appellate counsel was not deficient for omitting this issue.
 {¶ 20} Mr. Mack also accuses the prosecutor of knowingly using Mr. Willis' perjured testimony. Shortly after the subject murder, Mr. Willis was in jail on an unrelated charge, and one of the defense lawyers interviewed him there. During cross-examination, Mr. Willis' emphatic testimony was that he did not want to and did not say anything which would incriminate him as a snitch in this murder case, although he talked about other general matters. The defense later proffered the proposed testimony of the interviewing defense attorney to impeach Mr. Willis. This court's review of Mr. Willis' testimony and of the proffer indicates that the two are not inconsistent.
 {¶ 21} During closing argument, the prosecutor in reviewing Mr. Willis' testimony noted that when defense counsel interviewed him "[h]e said he didn't want to say anything at that time." (Tr. 1055.) Mr. Mack now asserts that the prosecutor meant that Mr. Willis never said anything to the defense lawyer and thus, should be considered misrepresentation to the jury or the knowing use of perjured testimony. This is meritless. The prosecutor's statement fairly reflects Mr. Willis' testimony that he did not want to say anything about the murder and was proper. Furthermore, the defense did not object to the statement during the closing argument. Therefore, appellate counsel in the exercise of professional judgment could conclude that raising this argument on a plain error analysis would be an unprofitable endeavor. State v. Underwood (1991), 73 Ohio App.3d 834,598 N.E.2d 822. If defense counsel does not object to the improper remarks of the prosecutor during closing argument, an appellate court may review them only under plain error analysis.
 {¶ 22} Mr. Mack also argues that the prosecutor improperly bolstered the testimony of the ballistics expert who opined that based on his tests and examinations, the gun found on Mr. Mack at the time of his arrest was the murder weapon. On direct examination, the prosecutor also elicited testimony that pursuant to standard procedures in the Scientific Investigation Unit, other experts also examined the bullets and concurred in the witness's opinions. On cross-examination, the defense attorney tried to insinuate that the witness's opinions were not his own but those of his superior. In response, the witness stated that the opinion was both his and his superior's, as well as the outside expert. During closing argument, the prosecutor mentioned several times that all the experts, including the outside expert, agreed that Mr. Mack's gun was the murder weapon.
 {¶ 23} Mr. Mack now claims that the prosecutor's use of this testimony deprived him of his constitutional rights under the Confrontation Clause and that appellate counsel was deficient in not raising this issue. However, Mr. Mack has established neither deficiency nor prejudice. Appellate counsel chose to attack the ballistics evidence by arguing that the witness was not qualified to testify as an expert. In rejecting this argument, this court noted: "The record clearly reflects that [the witness]'s opinions were not based upon the opinions of others but were merely confirmed by other experts within the Scientific Investigation Unit. Such a procedure is entirely consistent with routine forensic lab practices." (Slip op. at 29.) Moreover, the court also rejected a stronger Confrontation Clause argument. The coroner who testified was not the coroner who performed the autopsy,[1] but another coroner who reviewed the materials. That the court rejected these arguments shows that it would have rejected this one also.
 {¶ 24} Mr. Mack next argues ineffective assistance of trial counsel with multiple subarguments. This court will first address the issue that trial counsel was deficient in conducting voir dire because he did not fully inquire whether the jurors were racially prejudiced and whether the jurors were predisposed to impose the death penalty; i.e., whether a juror believed that if the defendant was guilty of aggravated murder, he should automatically receive the death sentence, regardless of any mitigating evidence.
 {¶ 25} Mr. Mack primarily relies upon Turner v. Murray (1986),476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27, Morgan v. Illinois (1992),504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 and Mu'Min v. Virginia
(1991), 500 U.S. 415, 111 S.Ct. 1899, 114 L.Ed.2d 493. Turner holds that a capital defendant accused of an interracial crime, upon his request, is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias. In Turner, the trial judge had refused to permit such questions during voir dire.
 {¶ 26} Similarly, in Morgan the Court ruled that a capital defendant upon request is entitled "to inquiry discerning those jurors who, even prior to the State's case in chief, had predetermined the terminating issue of his trial, that being whether to impose the death penalty." 504 U.S. at 736. Mr. Mack cites Mu'Min for the proposition that voir dire must cover certain subjects. However, in this pretrial publicity case, the Court's holding was that a trial court's findings of juror impartiality may be overturned only for manifest error.
 {¶ 27} First, this court notes that Mr. Mack seeks a substantial expansion of the law. The Court ruled that due process requires a trial court to allow questioning on racial prejudice and predisposition regarding the death penalty. However, Mr. Mack argues that trial counsel must ask each venireman whether he or she is racially prejudiced and whether he or she would automatically impose the death penalty. Under the principles that an appellate counsel is not deficient for not raising issues in a changing area of the law, Mr. Mack's appellate counsel had no duty to argue for an expansion of the law. Specifically, as to racial prejudice, the majority in Turner and Justices Powell and Rehnquist in their dissent note the potential danger in inquiring about racial prejudice; namely, that the jurors may conclude that race is somehow relevant to the case.
 {¶ 28} Moreover, in Mr. Mack's appeal to the Supreme Court of Ohio, appellate counsel raised a variant on the issue of a juror's predisposition to capital punishment. The fifth proposition of law was: "A trial court's failure to remove for cause jurors with a predisposition for recommending the death penalty in applicable cases violates a defendants [sic] right to a fair and impartial jury." Furthermore, the courts of Ohio have stopped short of requiring a trial counsel to ask each venireman such questions. Rather, it is for counsel to determine what questions should be asked on voir dire. State v. Group, 2002-Ohio-7247; State v. Twyford, 94 Ohio St.3d 340, 2002-Ohio-894,763 N.E.2d 122; State v. Stojetz, 84 Ohio St.3d 452, 1999-Ohio-464,705 N.E.2d 329 — the court declined to mandate the additional requirement that each prospective juror be "life qualified." Thus, appellate counsel in the proper exercise of professional judgment could exclude this argument; he could conclude that trial counsel acted properly in not asking these questions during voir dire and that on appeal the court would not find error.
 {¶ 29} Mr. Mack next submits that his trial counsel was ineffective because he waived Mr. Mack's presence at the jury view and because he did not make a record of the jury view. Neither of these arguments are persuasive. During trial the following colloquy occurred:
 {¶ 30} "Court: Mr. Mancino, do you want to waive the presence of the defendant [at the jury view]?
 {¶ 31} "Mr. Mancino: Yes.
 {¶ 32} "Court: All right. Defendant has waived presence of the defendant himself at the scene."
 {¶ 33} From this discussion Mr. Mack now asserts that his presence at the jury view was waived without his permission. The record, however, does not preclude the possibility that trial counsel had first secured permission before waiving Mr. Mack's presence. Moreover, in order to show ineffective assistance of trial counsel, appellate counsel would also have to show prejudice, that there exists a reasonable probability that, absent counsel's errors, the result of the trial would have been different. Mr. Mack fails to make a showing of prejudice; he fails to show that his presence at the jury view would have probably changed the result of the trial. In a similar case, State v. Treesh, 90 Ohio St.3d 460,2001-Ohio-4, 739 N.E.2d 749, the Supreme Court upheld defense counsel's waiver of the defendant's presence at pretrial conferences in a capital case. Thus, appellate counsel was not deficient for omitting this issue.
 {¶ 34} Regarding the record of the jury view, Mr. Mack argues that because the trial court noted that "Mr. Bombik (a prosecutor), Mr. Mancino brought up certain matters concerning the jury view previously," (Tr. 342), there must have been significant issues surrounding the jury view that required a record. However, the very next lines of the transcript reveal that the attorneys have resolved whatever the "certain matters" were. This resolution indicates that there was no prejudice. Furthermore, an invitation to infer prejudice does not present a strong argument. Thus, appellate counsel was not deficient in failing to raise this issue.
 {¶ 35} The fact that the "second chair" attorney acted more as an investigator than as an attorney did not deprive Mr. Mack of counsel and does not prove that his attorney failed to act as counsel.
 {¶ 36} Mr. Mack next argues that his trial counsel was ineffective because he did not investigate mitigation evidence for the penalty phase. Specifically, counsel did not retain a mental health professional or Charles See, an expert on inner city life and socialization. He now maintains that such experts could have explained how and where he went wrong and the pressures around him that led him to commit the subject crimes.
 {¶ 37} However, such evidence would have been inconsistent with the strategy pursued during the mitigation phase: an implicit playing upon the juror's sympathies and residual doubt — that it would be unjust to execute a man who was perhaps framed by the actual murderer. During the mitigation phase, Mr. Mack gave an unsworn statement in which he pleaded his innocence and for his life and stated his belief that the State's chief witness framed him to cover up the witness's murdering Mr. Sanelli. Mr. Mack's uncle, mother and grandmother testified that he had a hard childhood, but was a good person. Their testimony reflected their belief that Mr. Mack was innocent, and counsel's closing argument included an attack that the chief witness was a liar. Moreover, it is uncertain as to what the experts would have testified, and it is uncertain that such testimony would have made a difference. Thus, appellate counsel in the exercise of professional judgment could have concluded that an argument attacking trial counsel's strategy and based upon uncertain prejudice was not worth arguing.
 {¶ 38} Mr. Mack also complains that his trial counsel was ineffective in failing to investigate the State's case. He complains that his counsel failed to obtain a statement from Mr. Willis, the State's chief witness. However, the transcript shows that trial counsel did try to interview Mr. Willis, but he was unresponsive. Indeed, one of the major points of contention throughout this litigation has been the attempt of co-counsel to testify about that interview. Mr. Mack also argues that his counsel should have caught Mr. Willis in a lie — Mr. Willis testified that on Martin Luther King Day, the day of the murder, he was walking his daughter back home from the Fairfax Recreational Center, when he saw Mr. Mack and his accomplices for the second time that day. Mr. Mack now argues that because the day was a holiday, the center was closed, and Mr. Willis had to be lying. However, Mr. Willis' own testimony indicated otherwise. He testified that the center had a special festival and/or talent show in honor of the holiday and that was why he was walking his daughter back home. (Tr. 716.) Accordingly, this court rules that Mr. Mack has not shown that trial counsel was deficient in failing to investigate the State's case in chief.
 {¶ 39} Mr. Mack also alleges that his trial counsel did not conduct adequate discovery. However, a review of the record reveals that on February 8, 1991, counsel filed a "Request of notice of intention of prosecuting attorney to use evidence." The Motion for exculpatory and mitigatory material also included a Criminal Rule 16 Motion for Discovery, after the prosecutor failed to respond to discovery requests. Counsel sought all of the police witness statements pursuant to the Public Records Act, R.C. 149.43 and also moved for investigation services and experts. Later, counsel sought disclosure of Grand Jury testimony. Thus, the claim of failure to investigate is unfounded.
 {¶ 40} Mr. Mack also complains that his counsel did not object to Mr. Willis' testimony that he was afraid of Mr. Mack and the other accomplices on pages 731, 736 and 749. However, all of these statements were during Mr. Willis' cross-examination. A review of relevant testimony indicates that the trial judge would probably not have sustained the objection that the witness was not being responsive to the question. Thus, appellate counsel in the exercise of professional judgment could conclude that this issue was not worth raising.
 {¶ 41} Mr. Mack's fourth major assignment of error is that the trial court committed numerous errors. The first of these is that the trial judge deprived Mr. Mack of his Confrontation Clause rights by admitting the co-defendants' statements, which Mr. Willis heard prior to and after the killing. They include asking Mr. Willis if he had a gun they could use and Mr. Sowell's statement, "I shot him because he didn't do what I say. I told him to get out of the car, instead he got in and locked the door, so I shot the glass." However, appellate counsel was not deficient in raising this issue, because of Evid.R. 801(D)(2)(e) which provides that a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy is admissible evidence. State v. Shelton (1977),51 Ohio St.2d 68, 364 N.E.2d 1152. Counsel in the exercise of his reasonable professional judgment could have concluded that the subject statements fell within the Evid.R. 801(D)(2)(e) rule, and this issue would not have presented a winning argument.
 {¶ 42} Mr. Mack's next argument is that the trial court improperly limited the cross-examination of Mr. Willis. Defense counsel tried to show that Mr. Willis was engaged in the ongoing crime of welfare fraud and to confront Mr. Willis with his pending criminal case; the trial court disallowed both these attempts. However, appellate counsel was not deficient for failing to raise these points. As a general rule, only convictions can be used to attack the credibility of a witness. State v.Workman (1984), 14 Ohio App.3d 385, 471 N.E.2d 853 and State v.Rodriquez (1986), 31 Ohio App.3d 174, 509 N.E.2d 952.
 {¶ 43} Mr. Mack further argues that the trial court conducted an improper ex parte conference with a juror, which requires vacating the death sentence. The transcript reveals that at approximately 3:00 a.m. on the morning of July 17, the day the sentencing phase was to begin, a juror received a phone call in which the caller said: "We know who you are, and we know what you've done." That morning the juror talked to the judge about the call, and the judge then called a meeting with himself, the juror, the defense counsel and the prosecutor. The judge allowed counsel to question the juror. At the end of the meeting all the parties agreed with defense counsel's request that the juror be removed. The record indicates that the ex parte communication concerned nothing but the threatening phone call. Moreover, the timing of the meeting and the importance of subject matter are inconsistent with Mr. Mack's complaint that the judge did not disclose the contact.
 {¶ 44} Nevertheless, appellate counsel was not deficient in failing to raise this argument because of the many cases which have held that ex parte communications between the court and the jury were harmless error. State v. Schiebel (1990), 55 Ohio St.3d 71; 564 N.E.2d 541; Bosticv. Connor (1988), 37 Ohio St.3d 144, 524 N.E.2d 881; State v. Abrams
(1974), 39 Ohio St.2d 53, 313 N.E.2d 823; United States v. Bustamonte
(C.A. 6, 1986), 805 F.2d 201; and State v. Maynard (1987),38 Ohio App.3d 50; 526 N.E.2d 316. In State v. Jenkins (1984),15 Ohio St.3d 164, 473 N.E.2d 264, the Supreme Court of Ohio ruled that an unrecorded ex parte communication between a trial judge and a juror may be harmless error; the appellant must show prejudice in order to prevail on the issue. In the present case, Mr. Mack makes no showing of prejudice; indeed, in his next argument Mr. Mack concedes that the court acted correctly in removing the juror to avoid any possible unfairness from a juror who was threatened. Thus, appellate counsel in the exercise of professional judgment could conclude that this argument would just diminish more worthwhile arguments.
 {¶ 45} The next argument is that the judge erred in substituting one of the alternates for the juror who had been threatened. However, the Supreme Court of Ohio in State v. Hutton (1990), 53 Ohio St.3d 36,559 N.E.2d 432, explicitly permitted the exact procedure used in the present case; i.e., substituting an alternate for an original juror between the two phases of a capital case. What Mr. Mack is really seeking is a modification of the law. However, as noted above, an appellate counsel is not deficient for failing to anticipate developments in the law or failing to argue such an issue. As a corollary, appellate counsel cannot be deficient for failing to argue for a modification or extension of the law.
 {¶ 46} Moreover, neither Justice Pfeifer's dissent in State v.Murphy, 91 Ohio St.3d 516, 2001-Ohio-112, 747 N.E.2d 765, nor Lockett v.Ohio (1978), 438 U.S. 586, 57 L.Ed.2d 973, 98 S.Ct. 2954, are particularly strong foundations from which to argue that substituting an alternate before the sentencing phase in a capital case deprives a defendant of a proper jury trial because the decision will not be "unanimous" or because the alternate juror will not be exposed to the relevant evidence. Murphy considered the propriety of allowing alternates to be present with the jury during deliberations and Lockett ruled that Ohio's former death penalty scheme did not allow sufficient consideration of various mitigating circumstances before requiring a death penalty. There is also the problem that appellate counsel in 1993 could not have argued Justice Pfeifer's dissent from 2001.
 {¶ 47} The next arguments are that the trial court erred in considering statutory mitigating factors not raised by the defense — thus converting them into aggravating factors — and by considering non-statutory aggravating circumstances; namely, the circumstances surrounding the crime in determining to impose the death penalty. He also argues that the trial court ignored his mitigation evidence and allowed the prosecution to admit all the evidence from the rest of the trial into the sentencing phase. However, Mr. Mack has not established prejudice. Both this court and the Supreme Court of Ohio conducted an independent review of the death penalty, properly weighing the submitted mitigating factors against the aggravating circumstance, and concluded that the imposition of the death penalty was proper. Indeed, this court stated that the aggravating circumstance overwhelmingly outweighed mitigating factors.
 {¶ 48} Furthermore, in arguing that the trial court improperly permitted the prosecutor to reintroduce all the evidence from the guilt phase into the sentencing phase, Mr. Mack argues that the trial court improperly interpreted State v. DePew (1988), 38 Ohio St.3d 275,528 N.E.2d 542. In that case the court held that a literal reading of R.C. 2929.03(D)(1) permits the prosecutor to repeat "much or all that occurred during the guilt stage." 38 Ohio St.3d at 283. In the exercise of professional judgment, appellate counsel could have easily determined that the other twenty-seven arguments he did make were more promising than endeavoring to clarify or limit this ruling of the Supreme Court.
 {¶ 49} Under the general division of trial court errors, the last argument Mr. Mack submits is that the trial court improperly limited the admission of mitigation evidence. However, the only new evidence that he really references are really not submissions of evidence but subarguments during co-counsel Carol Mancini's closing arguments. The first was her effort to describe the cruelty and horribleness of electrocution, which the trial court quickly quashed. However, all arguments relating to electrocution are now moot because Ohio in November 2001, amended R.C.2949.22 to eliminate electrocution as the means of execution.
 {¶ 50} The other point was Carol Mancini's reference to a hearsay conversation in which she heard someone outside the courtroom describe the Mack trial as a murder case trying to "fry the nigger." (Tr. 1304.) The trial court immediately sustained an objection to this. Mr. Mack now argues that this prevented his counsel from arguing the racial aspects of his case. However, it was not an improper limitation on evidence, and a review of Carol Mancini's closing argument reveals that she was not trying to make a plea for racial justice, but giving an example of how often we consider life too cheap as part of her plea to value life by sparing Mr. Mack. Appellate counsel was certainly not deficient in omitting these arguments.
 {¶ 51} Mr. Mack's final arguments are additional ones that Ohio's death penalty scheme is unconstitutional. He now submits that his appellate counsel should have argued that the death penalty violates international law. However, this argument is unpersuasive. Its gravamen is that many nations have abolished the death penalty, thus making abolishment a worldwide norm. Nevertheless, later in the supporting affidavit submitted with the App.R. 26(B) application, he notes that even more countries still have the death penalty. He also submits that his appellate counsel should have attacked Ohio's postconviction petition procedure as providing capital defendants with insufficient constitutional safeguards. However, justiciability concerns, particularly ripeness, would allow appellate counsel in the exercise of professional judgment to conclude that this argument would only detract from the other thirteen attacks on Ohio's death penalty scheme.
 {¶ 52} Accordingly, this court denies Mr. Mack's application for reopening because of ineffective assistance of appellate counsel.
KENNETH A. ROCCO, P.J., and PATRICIA A. BLACKMON, J., CONCUR.
[1] The coroner who performed the autopsy had left the coroner's office and moved to another state.