**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Curtis James PLEASANT,**
**Defendant–Appellant.**

No. 99–1880.

United States Court of Appeals,
Sixth Circuit.

April 12, 2001.

Before NORRIS, SILER, and BRIGHT, Circuit Judges.*

## OPINION

PER CURIAM.

Defendant Curtis James Pleasant appeals his convictions and sentences for kidnapping and possession of a firearm during a crime of violence in violation of 18 U.S.C. §§ 1201 and 924(c), respectively. On appeal, defendant argues that (1) he was denied his constitutional right to self-representation; (2) the trial court compelled him to wear prison clothing at trial; (3) insufficient evidence supported a finding that he transported his victim across state lines against her will; and (4) the trial court erroneously enhanced his sentence by making an unsupported determination that the victim suffered a serious bodily injury within the meaning of the United States Sentencing Guidelines. For the reasons stated below, we AFFIRM defendant's convictions and sentences.

### I.

Defendant's victim, Sheila Armstrong, testified that she and defendant had known each other for approximately seventeen years and that they had lived together as husband and wife in Mobile, Alabama. She characterized their relationship as abusive and one which involved the use of narcotics. In September 1995, Armstrong fled defendant and went to Detroit, where her father and two brothers lived. Defendant visited her in Detroit and tried to persuade her to return to Mobile with him.

According to Armstrong's testimony, defendant went to her place of employment on the night of October 31, 1995, and indicated that he wanted to show her something in his car. After she refused to go outside, defendant grabbed her by the arm, at which time she noticed that he had a pistol in his jacket. Defendant took Armstrong to his car where he hit her in the back of the head with his pistol and punched her in the stomach before putting her in the trunk.[1] Defendant then took

---

* The Honorable Judge Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. One of Armstrong's co-workers, another security guard, confirmed Armstrong's testimony. According to the guard, defendant left the property, telling him that he and Armstrong were going to get some pizza and

Armstrong to a hotel, where, according to Armstrong, defendant beat her, kicked her, handcuffed her to a lamp, forced her to perform sex, and used his gun to play Russian roulette with her.

Armstrong said she temporarily escaped the following day when defendant left her in the car while he entered a drug house. She drove the car to her father's house and gave him defendant's gun, which he had left in the car. According to Armstrong, her father put the gun in a bag and the two left to go to the police station. However, they encountered defendant, who tussled with Armstrong's father to get the gun, grabbed Armstrong, and pointed the gun at her head.

Defendant took Armstrong to another hotel where they stayed for two nights. Armstrong testified that she smoked crack cocaine with defendant at the hotel and feigned affection so that defendant would not beat her. While at the hotel, defendant bound Armstrong with duct tape and made her perform sex against her will. She testified that she was not able to leave the hotel room.

Defendant then drove Armstrong from Michigan to Alabama. Armstrong testified that she crossed each state line against her will and did not seek help because she feared for her life. During the trip, defendant handcuffed her to the steering wheel whenever he bought gas or slept. Defendant also required Armstrong to urinate along the side of the road.

In November, defendant and Armstrong arrived at the Alabama townhouse that they had previously shared. Armstrong testified that she once again smoked crack cocaine and feigned affection so that defendant would not beat her. She also had sex with defendant against her will to avoid beatings. She was unable to leave the townhouse because defendant kept the front door locked from the inside and had nailed boards over the windows and back door. Defendant would not let her leave his sight, forcing her to urinate in a cup instead of going to the bathroom.

Armstrong escaped by convincing defendant she could not breathe and needed to go to the hospital. As defendant started to drive her to the hospital, she jumped out of the car and ran to a nearby house.

## II.

### A. Denial of Defendant's Requests to Represent Himself

We review a district court's denial of a defendant's request for self-representation for abuse of discretion. *See Robards v. Rees,* 789 F.2d 379, 384 (6th Cir. 1986).

Defendant argues that the district court violated his Sixth Amendment right to self-representation by refusing his requests prior to and during trial to proceed pro se and by ignoring a pre-trial letter that he sent (without the knowledge of his attorney) to the court requesting to proceed as co-counsel. He also argues that his decision to proceed with counsel at the beginning of trial was not an unequivocal waiver of his right to self-representation because the district court conditioned the choice of proceeding pro se by refusing to adjourn the case to give him additional time to prepare his defense.

#### 1. Pretrial requests

The district court noted that defendant unequivocally waived his right to self-representation before trial began. The district court informed defendant that he

---

would be right back. The guard did not see Armstrong in the car. The guard also testified that Armstrong had left her glasses and hat in the trailer where she worked.

could represent himself, but that the trial would not be adjourned to give defendant additional time to prepare his defense. Defendant responded, "I would like Mr. Minock [defendant's trial counsel] to represent me, but could I say one—." The government and defendant dispute whether the judge correctly interpreted this response as an unequivocal withdrawal of his request to represent himself.[2]

We are unable to say that the trial court erred in its finding that defendant unequivocally waived his right to self-representation. Indeed, defendant concedes on appeal that he wished appointed counsel to represent him absent an adjournment. While defendant contends that the circumstances were coercive, we agree with the district court's decision. Defendant's trial had been delayed repeatedly—fifteen trial dates had been scheduled over the course of about two and a half years. Moreover, the district court found that defendant was emotionally involved in the issues of his defense, had an eighth grade education, "and his positions both before and after the impanelling of the jury were motivated in large part by a desire to delay the trial or avoid it all together." Thus, by agreeing to proceed with counsel under circumstances that were not coercive, defendant unequivocally withdrew his request to self-representation and thereby waived his right to self-representation before trial began.

 Even in the absence of a waiver, the circumstances supported a refusal by the district court of defendant's requests to represent himself. A defendant in a criminal trial has a Sixth Amendment right to self-representation. In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court vacated a conviction for failure to allow a defendant to represent himself, noting the timeliness of the defendant's request and his ability to represent himself:

> Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will.

*Id.* at 835. The Court also observed that the right to self-representation is not absolute.

The government emphasizes *Robards v. Rees,* 789 F.2d 379 (6th Cir.1986), a case in which we contrasted the timeliness of the request for self-representation in *Faretta* with the defendant's request on the day of trial after the clerk had called the roll of jurors. Based on the last-minute timing of the defendant's request to proceed pro se and the court's conclusion that the commencement of trial would have been impermissibly delayed had the request been honored, we held in *Robards* that the district court did not abuse its discretion in denying defendant's request. *Id.* at 383–84.

Defendant's first request to represent himself came on the day of trial with prospective jurors standing outside of the courtroom.[3] And, as in *Robards,* had the

---

2. Defendant argues that his request to represent himself was unequivocal. The issue is not whether defendant's first request was unequivocal, however, but rather the issue is whether he unequivocally *withdrew* his request for self-representation.

3. While defendant's first request to proceed pro se was on the first day of trial, he had, unbeknownst to his attorney at the time, written the court two months preceding the trial requesting to serve as co-counsel. The trial court apparently did not construe the letter as a motion and never ruled on it. Although pro se motions are to be construed liberally, we

district court permitted defendant to proceed pro se and given defendant additional time to prepare his case, the trial would have been impermissibly delayed. Finally, defendant does not show how he was prejudiced by the purported denial of his request to represent himself. *See United States v. Martin,* 740 F.2d 1352, 1360–61 (6th Cir.1984) (stating that a trial court's decision to deny a continuance is reversible only upon a showing of an abuse of discretion, which in turn requires a showing of actual prejudice).

Accordingly, defendant would be in no position to demonstrate that a denial of his initial request constituted an abuse of the district court's discretion.

*2. Requests during trial*

 After trial had begun, the district court had even greater discretion to deny defendant's request to represent himself. *See United States v. Martin,* 25 F.3d 293, 296 n. 3 (6th Cir.1994) (noting that "if it was not an abuse of discretion, in *Robards,* to deny such a motion made on the first day of trial, the district court's decision, in the present case, to deny Martin's motion, when her motion was made after the trial was in full swing, is *a fortiori* a proper exercise of discretion"). Where a defendant wishes to substitute counsel, he must show good cause and do so in a timely manner. *United States v. Williams,* 176 F.3d 301, 314 (6th Cir.1999). In considering a defendant's request during trial to represent himself, several factors are weighed, including the

> timeliness of the motion; adequacy of the district court's inquiry into the matter; the extent of the conflict between the attorney and client and whether it resulted in a total lack of communication; and a balancing of these factors

do not believe the district court abused its discretion, given its determination that defen-

with the public's interest in the prompt and efficient administration of justice.

*Id.* (citations omitted). Finally, "[a] defendant has no right to substitute counsel for the purpose of delaying or manipulating his trial." *United States v. Castro,* 908 F.2d 85, 88 (6th Cir.1990).

Defendant argues that the district court never meaningfully inquired about, and prohibited defendant from addressing, his and his counsel's concerns during trial that the two were not communicating and had "a conflict of interest" as to how the case should be defended.

 Despite defendant's allegations that the district court did not inquire into the basis for his requests, the district court did allow him to discuss in some detail his concerns at various points in the trial. Also, the district court did not abuse its discretion by denying defendant's request to personally cross-examine the victim, given its finding that defendant's trial involved "a case of alleged abuse and intimidation and I simply wouldn't allow that to happen to the witness in this courtroom." Based on the last-minute timing of defendant's requests to proceed pro se or as co-counsel, the repeated dialogue between defendant and the trial judge, and the judge's finding that much of defendant's motivation was to delay his trial, we do not believe that the district court abused its discretion by denying defendant's in-trial requests to represent himself.

*B. Prison Clothing at Trial*

 We review a district court's denial of a motion for continuance for an abuse of discretion. *See United States v. King,* 127 F.3d 483, 486 (6th Cir.1997).

dant was not fit to represent himself and that his primary motivation was to delay his trial.

■ Defendant claims that the district court, by failing to adjourn so that he could obtain civilian clothing, unconstitutionally compelled him to wear prison clothing at trial. On the first day of trial, defendant's counsel objected to proceeding with trial because defendant was wearing prison clothing. The district court did not grant an adjournment, noting that the trial had been scheduled for a long time and implying that defendant, his family, and his counsel had plenty of notice to obtain appropriate clothing for trial. The district court also noted that it had asked the U.S. Marshal Service to lend defendant clothing. A marshal then testified that she was told by lockup deputies that defendant refused an offer of gray pants, a blue jacket, and a white shirt.

■ In general, "a criminal defendant 'should not be compelled to go to trial in prison or jail clothing because of the possible impairment' of the presumption of innocence guaranteed as part of a defendant's due process right to a fair trial." *United States v. Waldon,* 206 F.3d 597, 607 (6th Cir.2000) (quoting *Estelle v. Williams,* 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976)). Under the circumstances, we hold that defendant was not compelled to wear prison clothing.

## C. Sufficiency of the Evidence

■ We normally review "claims of insufficient evidence to support a jury finding of guilt under the standard of 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Clemis,* 11 F.3d 597, 601 (6th Cir.1993) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). However, absent a showing of a manifest miscarriage of justice, defendant forfeited his right to challenge the sufficiency of the evidence because he failed to renew his motion for judgment of acquittal after all of the evidence had been presented. *See United States v. Swidan,* 888 F.2d 1076, 1080 (6th Cir.1989).

■ One of the elements that the prosecution must prove in a case of kidnapping is that the abducted "person is willfully transported in interstate or foreign commerce." 18 U.S.C. § 1201(a)(1). Though defendant concedes that sufficient evidence supports a finding that he forcibly seized Sheila Armstrong within Michigan, defendant asserts that insufficient evidence exists to show that Armstrong crossed state lines against her will. Defendant points to testimony by his mother and his ex-wife to support a theory that discord between defendant and Armstrong had settled by the time the two left Michigan and that, only after reaching Alabama, did their relationship become violent again and hence Armstrong did not cross any state line against her will.

Defendant's argument falls far short of demonstrating a miscarriage of justice. Even had defendant not forfeited a sufficiency of the evidence claim, Sheila Armstrong's testimony clearly constitutes sufficient evidence that she was taken across state lines against her will, especially when credibility is weighed in the light most favorable to the government. Given this testimony, the evidence is clearly sufficient to support a conclusion that defendant forcibly caused Armstrong to cross state lines against her will.

## D. Increase of Defendant's Base Offense Level

■ We review a district court's factual determinations for sentencing purposes for clear error. 18 U.S.C. § 3742(e). A factual finding is clearly erroneous where, "although there may be some evi-

dence to support the finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Tipton,* 11 F.3d 602, 609–10 (6th Cir. 1993) (quoting *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Legal conclusions regarding the Sentencing Guidelines are reviewed de novo. *See United States v. Smart,* 41 F.3d 263, 264 n. 1 (6th Cir.1994). De novo review also applies to mixed questions of law and fact. *See United States v. McDonald,* 165 F.3d 1032, 1034 (6th Cir. 1999).

Defendant requests a re-sentencing, arguing that the district court erred by finding that Sheila Armstrong sustained a "serious bodily injury" within the meaning of the guidelines and thereby improperly applied a two-level enhancement to his sentence under U.S .S.G. § 2A3.1(b)(4). He further contends that the district court erred by failing to provide any justification for that enhancement.

Section 2A3.1(b)(4)(B) of the Sentencing Guidelines mandates that "if the victim sustained serious bodily injury, increase by 2 levels." "Serious bodily injury" is defined as

> injury involving extreme physical pain or the impairment of a function of a bodily member, organ or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. As used in the guidelines, the definition of this term is somewhat different than that used in various statutes.

US SENTENCING GUIDELINES MANUAL, § 1B1.1 comment. (n.1(j)) (1995).

The district court based its enhancement on the "extreme physical pain" part of the Sentencing Guidelines' definition of serious bodily injury. Defendant objected to this scoring, emphasizing the impairment part of the definition of "serious bodily harm" and arguing that the Sentencing Guidelines' definition differed from its layman's meaning. The district court responded by highlighting the disjunctive definition, noting that it need only find that Armstrong experienced "extreme physical pain" in order to find "serious bodily injury." Photographs of Armstrong's bruises that were introduced into evidence, and testimony by Armstrong and a police officer belie defendant's claim that there was no evidence that Armstrong suffered extreme physical pain. The district court did not err by enhancing defendant's sentence by two levels for serious bodily injury.

### E. Defendant's Supplemental Brief

Months after the government and defendant's counsel submitted their briefs, defendant submitted pro se a supplemental brief. Though we are not obligated to consider the issues raised by defendant's untimely brief, we note that all of his claims lack merit. Since one of defendant's claims for relief invokes *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), a case that recently has led to numerous reversals, we briefly explain why defendant's *Apprendi* claim is devoid of any merit.

Defendant contests his twenty-year consecutive sentence for using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1). Defendant contends that under § 924(c)(1), he should have received a maximum sentence of five years. Defendant argues that the trial court's determination by a preponderance of the evidence that he had a prior firearm conviction and therefore warranted a twenty-year enhancement constituted an *Apprendi* error. Defendant's argument fails under the plain language of *Apprendi,* which explicitly exempts prior convictions:

*"Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000) (emphasis added). Thus, the sentencing court's finding of a prior conviction by a preponderance of the evidence was not improper.

### III.

The convictions and sentences are AFFIRMED.